# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | |
|---|---|
| MCOM IP, LLC, | Civil Action No. 6:21-cv-00196 |
| Plaintiff, | |
| v. | |
| CSI, INC, | JURY TRIAL DEMANDED |
| Defendant. | |

CSI, INC.'s
MOTION TO DISMISS UNDER FEDERAL RULES 12(b)(3) AND 12(b)(6) OR,
IN THE ALTERNATIVE, TRANSFER UNDER 28 U.S.C. §1404

BRESSLER, AMERY & ROSS, P.C.
A Professional Corporation
17 State Street
New York, New York  10004
(212) 425-9300
Attorneys for Defendant CSI, Inc.

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

TABLE OF AUTHORITIES……………………………………………………………………………………..

I.      INTRODUCTION…………………………………………………………………………………1

II.     BACKGROUND ............................................................................................................ 2

        A.      The '508 Patent and Asserted Claim ...................................................... 2

        B.      CSI's Business Operations ...................................................................... 4

III.    LEGAL STANDARD ................................................................................................... 4

        A.      Failure to State a Claim ........................................................................... 4

        B.      Improper Venue and Transfer of Venue ................................................. 6

IV.     ARGUMENT ................................................................................................................. 7

        A.      Plaintiff's Infringement Allegation Fails to Meet the Iqbal/Twombly Plausibility
        Standard, and the Court Should Dismiss this Case .......................................................... 7

        B.      This District is an Improper Venue, Necessitating Transfer ................................ 11

                1.      This District is an Improper Venue for CSI. ...................................... 11

                2.      This Case Can be Transferred to the Western District of Kentucky ............... 13

        C.      Alternatively, This Case Should be Transferred to the Western District of Kentucky
        For Convenience. ................................................................................................. 13

                1.      All Private Interest Factors Heavily Favor Transfer to Kentucky. ................. 14

                2.      All Public Interest Factors Heavily Favor Transfer to Kentucky. ................. 17

V.      CONCLUSION ........................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

*10Tales, Inc. v. TikTok Inc.*,
No. 6:20-CV-00810-ADA, 2021 U.S. Dist. LEXIS 96694 (W.D. Tex. May 21, 2021) …………………….…………………………………………….... 16

*In re Adobe Inc.*,
No. 2020-126, 823 Fed. Appx. 929 (Fed. Cir. July 28, 2020)............................14

*In re Apple Inc.*,
979 F.3d 1332 (Fed. Cir. 2020) ..........................................................................17

*In re Apple, Inc.*,
581 F.App'x. 886 (Fed. Cir. 2014) ....................................................................16

*Artrip v. Ball Corp.*,
735 Fed. Appx. 708 (Fed. Cir. 2018)..............................................................7, 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................2, 4, 7, 9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).............................................................................2, 4, 5, 7

*In re Cray Inc.*,
871 F.3d 1355 (Fed. Cir. 2017) ......................................................................6, 12

*DataQuill, Ltd. v. Apple Inc.*,
No. A-13-CA-706-SS, 2014 U.S. Dist. LEXIS 82410 (W.D. Tex.
June 13, 2014)...................................................................................................17

*De La Vega v. Microsoft Corp.*,
No. W-19-CV-00612-ADA, 2020 U.S. Dist. LEXIS 116081 (W.D.
Tex. Feb. 11, 2020)........................................................................................5, 10

*Diem LLC v. BigCommerce, Inc.*,
No. 6:17-CV-186 ..................................................................................................5

*DynaEnergetics Eur. GmbH v. Hunting Titan, Inc.*, No. 6:20-cv-
00069-ADA, 2020 U.S. Dist. LEXIS 105241 (W.D. Tex. June 16,
2020) ...................................................................................................................15

*Fintiv, Inc. v. Apple, Inc.*,
    No. 6:18-cv-00372-ADA, 2019 U.S. Dist. LEXIS 171102 (W.D.
    Tex. Sept. 10, 2019) ................................................................................15, 16

*In re Genentech, Inc.*,
    566 F.3d 1338 (Fed. Cir. 2009) ............................................................15

*Int'l Bus. Machines Corp. v. Booking Holdings Inc.*,
    775 F. App'x 674 (Fed. Cir. 2019) ........................................................7

*Lee v. Verizon Communs., Inc.*,
    837 F.3d 523 (5th Cir. 2016) ................................................................5

*Metricolor LLC v. L'Oreal S.A.*,
    791 F. App'x 183 (Fed. Cir. 2019) ........................................................5

*Moskowitz Family LLC v. Globus Med., Inc.*,
    No. 6:19-cv-00672-ADA, 2020 U.S. Dist. LEXIS 145438 (W.D.
    Tex. Jul. 2, 2020) ..................................................................................16, 17

*Nat'l Steel Car Ltd. v. Greenbrier Cos.*,
    6:19-cv-00721-ADA, 2020 U.S. Dist. LEXIS 132270 (W.D. Tex.
    Jul. 27, 2020) ........................................................................................6

*OIP Techs., Inc. v. Amazon.com, Inc.*,
    788 F.3d 1359 (Fed. Cir. 2015) ............................................................5

*Optic153 LLC v. Thorlabs Inc.*,
    6:19-CV-00667-ADA, 2020 U.S. Dist. LEXIS 108167 (W.D. Tex.
    June 19, 2020) ......................................................................................6

*Raz Imps., Inc. v. Luminara Worldwide, LLC*,
    No. 3:15-cv-02223-M, 2015 U.S. Dist. LEXIS 148639 (N.D. Tex.
    Nov. 3, 2015) ........................................................................................15

*Soar Tools, LLC v. Mesquite Oil Tools, Inc.*,
    No. 5:19-CV-243-H, 2020 U.S. Dist. LEXIS 166493 (N.D. Tex.
    Sep. 11, 2020) ......................................................................................5, 10

*TC Heartland LLC v. Kraft Foods Grp. Brands, LLC*,
    137 S. Ct. 1514 (2017) ..........................................................................11, 12

*Uniloc USA Inc. v. Samsung Elecs. Am.*, No. 2:16-cv-00642-JRG,
ECF No. 216, 2017 U.S. Dist. LEXIS 229560 (E.D. Tex. Apr. 19,
2017) ...................................................................................................15

*In re Volkswagen of Am. Inc.*,
545 F.3d 304 (5th Cir. 2008) ......................................................6, 13, 14, 16, 17

*Wet Sounds, Inc. v. PowerBass USA, Inc.*,
No. H-17-3258, 2018 U.S. Dist. LEXIS 64600 (S.D. Tex. Apr. 17,
2018) ...................................................................................................11

*XY, LLC v. Trans Ova Genetics, LC*,
2017 U.S. Dist. LEXIS 218449 (W.D. Tex. Apr. 5, 2017) .................................15

*In re ZTE (USA) Inc.*,
890 F.3d 1008 (Fed. Cir. 2018) ..........................................................................6

## Statutes

28 U.S.C. §1400 .......................................................................................................2

28 U.S.C §1400(b) ........................................................................................6, 11, 13

28 U.S.C. §1404(a) ...................................................................................................6

28 U.S.C. §1406(a) .............................................................................................6, 13

## Other Authorities

CSI's "Digital Payments Solutions" ......................................................................9

Federal Rule of Civil Procedure 8(a)(2) ................................................................4

Rule 12(b)(6) ...........................................................................................................5

U.S. Patent No. 8,862,508 ...............................................................................*passim*

## I.      INTRODUCTION

Plaintiff MCOM IP, LLC filed its Original Complaint ("OC") for patent infringement on March 2, 2021. (D.I. 1). Defendant Computer Services, Inc. ("CSI") filed a motion to dismiss the Original Complaint, or in the alternative to transfer, on June 18, 2021. (D.I. 11).  Plaintiff never responded to CSI's motion by the response deadline, but instead sought an extension of time, which was granted by the Court. (Text Order, August 14, 2021). Prior to the granting of the extension of time, plaintiff filed a First Amended Complaint ("FAC") on August 9, 2021. (D.I. 14). The FAC is substantively identical to the Original Complaint and includes the same allegations and the same claim chart—all word-for-word. The only difference is that the FAC leaves out a claim of willful infringement, and with respect to CSI's knowledge of the asserted patent, alleges at paragraphs 10 and 11 that CSI had knowledge of the patent as of the "filing of the lawsuit"(FAC; D.I. 14, at ¶ 11), whereas the Original Complaint alleged at paragraphs 10 and 11 that CSI had such knowledge "from at least the date of issuance of the patent." (Original Complaint; D.I. 1, at ¶ 11).

Accordingly, CSI submits herein the same motion it previously submitted in connection with the Original Complaint, along with the same declarations, which apply identically and equally to the FAC as they did to the Original Complaint.

MCOM, Inc.'s vague infringement allegation against CSI fails to put CSI on notice of how its system purportedly infringes  U.S. Patent No. 8,862,508 ("the '508 patent").[1] FAC ¶¶ 6-12. Claim 1 of the '508 patent is directed to a method  that monitors a user's active banking session in real-time and selects, in real-time, targeted marketing correlated to the user based on user-defined preferences. However, while the FAC attempts to allege that the claimed elements are present in

---

[1] Both Complaints discuss only claim 1 of the '508 patent.

or practiced by the CSI system, the alleged "support for the allegations" in the provided table is completely deficient in identifying where in the CSI system the claimed elements are met. As demonstrated in the attached Declaration of Jason Young, the CSI system simply does not have the features that plaintiff alleges. For at least these reasons, Plaintiff's infringement allegation lacks sufficient specificity necessary to state a claim that satisfies the "plausibility" standard set forth in *Iqbal* and *Twombly* and, accordingly, should be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Plaintiff filed this case in the wrong venue. CSI is incorporated in Kentucky and its headquarters are in Paducah, Kentucky. Although the complaint alleges that CSI has an established place of business in this District and has committed acts of infringement there, there is absolutely no support or any other information provided beyond a bald statement of attorney argument in the complaint. As demonstrated in the attached Declaration of T. David Culbertson, CSI has a very minor presence in this District, and importantly, CSI's presence in this District has nothing to do with the system accused of infringement. Accordingly, pursuant to 28 U.S.C. §1400, venue is improper, and this case should be dismissed or, in the alternative, pursuant to §1406, transferred to the Western District of Kentucky where venue is proper for both Plaintiff and Defendant. Moreover, even if venue is proper (it is not), this case should be transferred to the Western District of Kentucky pursuant to §1404 because it is a far more convenient venue for CSI and other non-party witnesses to litigate this case than the Western District of Texas.

## II.    BACKGROUND

### A.  The '508 Patent and Asserted Claim

Plaintiff asserts that the CSI banking systems (CSI Platforms) infringe  the '508 patent, entitled "System and Method for Unifying E-Banking Touch Points and Providing Personalized

Financial Services". Claim 1 of the '508 patent, which is the only claim discussed in the complaint

is as follows (emphasis added):

1. A method for constructing a unified electronic banking environment, said method comprising the steps of:

providing at least one common multi-channel server coupled to more than one e-banking touch points and also coupled to at least one computer system configured with at least one control console, said more than one e-banking touch points and said at least one computer system being provided in locations remote from the other, and further wherein said more than one plurality of e-banking touch points are comprised of at least two different types of e-banking touch point devices, each of which comprise one or more of an automatic teller/transaction machine (ATM), a self service coin counter (SSCC), a kiosk, a digital signage display, an online accessible banking website, a personal digital assistant (PDA), a personal computer (PC), a laptop, a wireless device, or a combination of two or more thereof, and wherein at least one of said e-banking touch points is in communication with one or more financial institutions through said multi-channel server;

receiving an actionable input from at least one e-banking touch point;

retrieving previously stored data associated with said actionable input, wherein said previously stored data is accessible to any one of said e-banking touch points, and said previously stored data comprises data from one or more financial institutions and one or more user-defined preferences;

delivering said retrieved data to said at least one e-banking touch point transmitting said actionable input;

storing transactional usage data associated with said at least one e-banking touch point transmitting said actionable input, wherein said stored transactional usage data is accessible by any one of said more than one e-banking touch points and said at least one computer system;

**monitoring** via said server an **active session in real-time** for selection of targeted marketing content correlated to said user-defined preferences;

subsequent to said monitoring, **selecting in real-time said targeted marketing content** correlated to said user-defined preferences; and

**transmitting in real-time said targeted marketing content** during said active session to at least one of said e-banking touch points for acceptance, rejection, or no response by a user, wherein said response by said user is used during said active session to determine whether **transmission of additional information** related to said marketing content occurs **during said active session**.

('508 patent, cl. 1.)

3

### B. CSI's Business Operations

CSI is a Kentucky corporation with its headquarters in Paducah, KY. *See generally* Declaration of T. David Culbertson ("Culbertson Decl."). CSI has other subsidiary locations in Kentucky, Tennessee, Indiana, and Texas, though these additional locations are much smaller and perform very isolated portions of CSI's activities. *See id.* Although CSI has two locations within this District (Waco and Austin), they are relatively small and were not involved in the development of the CSI Platforms. *Id.* at ¶¶ 7-9.

CSI is in the business, among others, of developing and utilizing bank data processing software platforms to then allow CSI to process institutional transaction data. *See* Declaration of Jason Young ("Young Decl."), ¶ 3. The banking software platforms developed by CSI allow banks to conduct regular and routine banking transactions with bank customers. *Id.* As a part of these digital banking transactions, the CSI platforms and web designs allow a bank to place a banner or ad that may be viewed by the bank customer during the digital banking transaction. *Id.* Critically, the CSI Platforms do not monitor user banking sessions in real-time, do not select targeted marketing content in real-time, and do not provide such content to a user in real-time. *Id.* at ¶¶ 7-8. It should be noted that the accused CSI Platforms have been in commercial use since at least 1991, which predates the earliest filing date of the '508 patent by more than 14 years. Culbertson Decl. at ¶ 7.

## III.   LEGAL STANDARD

### A. Failure to State a Claim

To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Twombly*, 556 U.S. at 678 (citing *Iqbal*, 550 U.S. at 570). Further, Federal Rule of Civil Procedure 8(a)(2) requires that a complaint

4

provide a defendant fair notice of the plaintiff's claim and the grounds relied upon. The obligation to provide fair notice of the claim requires more than mere conclusions or formulaic recitations of the elements of a cause of action. *Id.* at 555 (citations omitted). When analyzing a motion to dismiss, "courts are not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

Regional circuit law applies when reviewing a Rule 12(b)(6) motion to dismiss. *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015). Fifth Circuit courts apply the *Twombly*-plausibility standard and "may dismiss a direct-infringement claim under Rule 12(b)(6) where the plaintiff's complaint fails to allege the manner of the defendant's infringement with specificity." *Soar Tools, LLC v. Mesquite Oil Tools, Inc.*, No. 5:19-CV-243-H, 2020 U.S. Dist. LEXIS 166493, at *12-13 (N.D. Tex. Sep. 11, 2020); *see also Lee v. Verizon Communs., Inc.*, 837 F.3d 523, 533 (5th Cir. 2016). Conclusory or partial allegations of infringement are insufficient. To survive dismissal, a plaintiff must "provid[e] facts sufficient to create a plausible inference that each element of the claim is infringed by the accused products." *Diem LLC v. BigCommerce, Inc.*, No. 6:17-CV-186 JRG-JDL, 2017 U.S. Dist. LEXIS 230557, at *5 (E.D. Tex. May 11, 2017). Failure to address a limitation is an appropriate ground for dismissal. *See Metricolor LLC v. L'Oreal S.A.*, 791 F. App'x 183, 188 (Fed. Cir. 2019) (The complaint was dismissed for failing to sufficiently show that the accused products contain each element of the independent claims.); *see also De La Vega v. Microsoft Corp.*, No. W-19-CV-00612-ADA, 2020 U.S. Dist. LEXIS 116081, at *16 (W.D. Tex. Feb. 11, 2020) (Holding the complaint failed where the plaintiff did not "include even a short written description of how the accused instrumentalities meet the 'coupling' limitation.").

### B.  Improper Venue and Transfer of Venue

A patent infringement action must be brought where the alleged infringer resides or where the defendant has committed acts of infringement and has a regular and established place of business. 28 U.S.C §1400(b). To satisfy the latter requirement, "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017). Venue is not proper if one of these requirements is not met. *Id.* Plaintiff bears the burden of establishing venue is proper. *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013 (Fed. Cir. 2018). *See also Optic153 LLC v. Thorlabs Inc.*, 6:19-CV-00667-ADA, 2020 U.S. Dist. LEXIS 108167 (W.D. Tex. June 19, 2020); *Nat'l Steel Car Ltd. v. Greenbrier Cos.*, 6:19-cv-00721-ADA, 2020 U.S. Dist. LEXIS 132270 (W.D. Tex. Jul. 27, 2020).

On a finding that the venue is improper, the Court may transfer the case "to any district or division in which it could have been brought." 28 U.S.C. §1406(a). Alternatively, the Court may transfer the case for convenience if it deems the venue proper. *See* 28 U.S.C. §1404(a). Eight private and public factors determine whether transfer is favored. These factors include:

> (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; (4) all other practical problems that make trial of a case easy, expeditious and inexpensive[;] … [(5)] the administrative difficulties flowing from court congestion; [(6)] the local interest in having localized interests decided at home; [(7)] the familiarity of the forum with the law that will govern the case; and [(8)] the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.

*In re Volkswagen of Am. Inc.*, 545 F.3d 304, 312, 315 (5th Cir. 2008). Here, five factors weigh in favor of transfer to the Western District of Kentucky, and three factors are neutral. No factors favor keeping this case in Texas.

6

## IV.    ARGUMENT

### A. <u>Plaintiff's Infringement Allegation Fails to Meet the Iqbal/Twombly Plausibility Standard, and the Court Should Dismiss this Case</u>

Plaintiff's factual allegations do not expressly or even inferentially support a plausible claim for infringement, necessitating the dismissal of this complaint. *See Artrip v. Ball Corp.*, 735 Fed. Appx. 708, 714 n.4 (Fed. Cir. 2018); *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570. Direct infringement "requires that all the steps of a claimed method be performed by or attributable to a single entity." *Int'l Bus. Machines Corp. v. Booking Holdings Inc.*, 775 F. App'x 674, 677 (Fed. Cir. 2019) (citation omitted). Even when the complaint is read in a light most favorable to Plaintiff, it is so lacking in specificity that one cannot infer the manner in which the CSI Platforms allegedly infringe the '508 patent.

Claim 1[2] requires far more than simply creating user specific content. The '508 patent instead requires that several specific steps be performed in "real-time" during an active banking session:

- "monitoring … an *active* session in *real-time* for selection of targeted marketing content";
- "selecting in *real-time* … targeted marketing correlated to … user-defined preferences";
- "transmitting in *real-time* said marketing content during said *active* session"; and
- "determine whether transmission of additional information related to said marketing content occurs during said *active* session"

This is inherently different from the conventional CSI Platforms which have no such real-time capabilities, as discussed in detail below.

---

[2] The only claim discussed in the complaint. The other independent claims, 7 and 13, contain substantively the same limitations as claim 1. Thus, all 20 claims of the '508 patent contain essentially the same elements of claim 1 discussed here.

Specifically, the CSI Platforms allow a bank to conduct regular and routine banking transactions with bank customers. Young Decl. at ¶ 4. As a part of these digital banking transactions, the CSI Platforms allow a bank to "place a banner or ad that may be viewed by the bank customer during the digital banking transaction." *Id.* Critically, this ad or banner is not targeted or customized to any individual bank customer or selected based on a customer profile. *Id.* at ¶ 5. Rather, this ad is "a general ad or banner that is included by the bank in all digital banking transactions with all of its customers … [and] may be part of a bank marketing campaign for various periods of time chosen by individual banks." *Id.* For example, a bank may run the same general ads or banners on "every end user transaction of customers for a two- or four-week period." *Id.*

The most user-specific, targeted advertisements generated from the CSI Platforms come from the bank's ability to use the platform to create and send communications to specific customers in the form of emails or phone calls; however, such communication **does not occur in real-time**. *Id.* at ¶ 6. Moreover, the communications are not a part of the active online banking transaction or banking interaction between a bank and a customer. *Id.* Furthermore, it is important to distinguish that the CSI Platforms are not capable of allowing banks to monitor in *real-time* an *active* banking transaction, nor are banks able to then select in *real-time* targeted marketing to be pushed to individual users based on that user's profile or preferences. *Id.* Banks may only communicate this user-specific marketing via email or phone message, which is clearly not in real-time and is not occurring during an ongoing banking transaction. *Id.*

Plaintiff relies on the general and conclusory allegation that the CSI Platforms do precisely what is required by the '508 patent, and therefore constitutes infringement of Claim 1. However, plaintiff fails to provide any specific facts necessary to support its infringement allegation. An

assertion of patent infringement simply cannot stand on such a conclusory and threadbare allegation. *See Iqbal*, 556 U.S. at 678. Plaintiff's allegations fail to adequately identify how at least the following claim limitations are found in the CSI Platforms, nor can they be inferred from the complaint.

"**Monitoring … an *active* session in *real-time* for selection of targeted marketing content**." Claim 1 requires "monitoring …  an active session in real-time for selection of targeted marketing content correlated to said user-defined preferences." '508 patent, Claim 1. Instead of tying this claim requirement to any portion of the CSI Platforms, Plaintiff cites CSI's "Digital Payments Solutions" section of its website, which has nothing to do with this claim requirement. FAC ¶ 9 p. 8. Specifically, the quoted language from CSI's website details how online payments work in a secure manner and "provide cross-selling opportunities through advertising." *Id.* As discussed in the Young Declaration, the advertising provided in this process is neither real-time nor active, as it is not adjusted during a user banking session. Young Decl. at ¶ 5.

"**Selecting in *real-time* … targeted marketing correlated to … user-defined preferences**." Claim 1 also requires, subsequent to said monitoring, the "selecting in real-time … targeted marketing content correlated to said user-defined preferences." FAC ¶ 9 p. 8; '508 patent, Claim 1. For this claim element, plaintiff again cites CSI's Digital Payments Solution website, as well as the description of CSI's "cloud-based core banking solution." *Id.* at p. 9. While this process allows customers to access their banking information online, none of this creates *real-time,* targeted marketing correlated to the banking preferences of the user. Young Decl. at ¶ 5.

"**Transmitting in *real-time* said marketing content during said *active* session** … to d**etermine whether transmission of additional information related to said marketing content occurs during said *active* session**." Lastly, Claim 1 additionally requires the transmission of the

marketing content, again in *real time* and during the *active* session. FAC ¶ 9 p. 10; '508 patent,

Claim 1. Plaintiff fails to provide any additional evidence to support the allegation that this claim

element is satisfied by the CSI Platforms. Again, as detailed in the Young Declaration, the CSI

Platforms simply do not transmit targeted marketing content in real-time during an active user

session, nor do they transmit additional information during the active session. Young Decl. at ¶ 8.

The CSI Platforms do not include any of the required features which MCOM claims are

found in the CSI Platforms. Young Decl. at ¶ 26. The Chart provided in the complaint features a

side-by-side comparison that simply adds nothing. FAC ¶ 9.[3] By failing to even mention many of

the claim terms, Plaintiff necessarily "does not identify [all limitations] in the context of the

accused instrumentality and/or describe how each operates. Because Plaintiff does not include

even a short written description of how the accused instrumentalities meet [these] limitation[s], his

[C]omplaint fails to state a claim upon which relief can be granted." *See De La Vega*, 2020 U.S.

Dist. LEXIS 116081, at *16. Moreover, the facts alleged, even when read in Plaintiff's favor, are

insufficient to infer that the CSI Platforms practice each and every limitation in Claim 1. Plaintiff

has failed to put CSI on notice of the manner by which the CSI Platforms purportedly infringe and,

accordingly, Plaintiff's complaint should be dismissed. *See Soar Tools, LLC*, 2020 U.S. Dist.

LEXIS 166493, at *12-13; *Artrip*, 735 Fed. Appx. at 714. While plaintiff may have completely

missed the mark in the original complaint, after having been made aware of the serious

deficiencies, to have again missed the mark in three subsequent claim charts is difficult to

---

[3] CSI's counsel has repeatedly brought to the attention of plaintiff's counsel that the infringement
allegations in the OC and the FAC are woefully inadequate. In response, plaintiff's counsel has
provided additional claim charts that supposedly better highlight the infringement allegations. Not
surprising, even a casual review reveals that these supposedly new and improved charts are equally
deficient. *See generally* Declaration of Pierre R. Yanney ("Yanney Decl."), Exh. 2 "May 13, 2021
claim chart", Yanney Decl., Exh. 3 "May 22, 2021 claim chart," and Yanney Decl., Exh. 4 "June
3, 2021 claim chart".

comprehend. After four strikes at making out a case for infringement, this Court should step in and dismiss this case—enough is enough.

### B.  This District is an Improper Venue, Necessitating Transfer

#### 1. This District is an Improper Venue for CSI

Plaintiff alleges venue is proper under a "substantial business" theory based on their allegation that (1) "at least a portion of the infringements alleged herein" occurred in this District, and (2) CSI's alleged regular "doing or soliciting business, engaging in other persistent courses of conduct and/or deriving substantial revenue from goods and services provided to individuals in Texas and this District" constitutes "substantial business" in the Western District of Texas. FAC ¶ 5.[4]

Plaintiff misconstrues the venue requirements in alleging CSI fits into these requirements. Venue for patent cases is proper in a judicial district where (1) the defendant resides or (2) "the defendant has committed acts of infringement and has a regular and established place of business." *Wet Sounds, Inc. v. PowerBass USA, Inc.*, No. H-17-3258, 2018 U.S. Dist. LEXIS 64600, at *2 (S.D. Tex. Apr. 17, 2018) (citing 28 U.S.C. § 1400(b)); *see also TC Heartland LLC v. Kraft Foods Grp. Brands, LLC*, 137 S. Ct. 1514, 1518 (2017) (Congress "placed patent infringement cases in a class by themselves, outside the scope of general venue legislation." (citations omitted)) A domestic corporation resides only in the state of its incorporation for the purpose of the patent-venue statute. *Wet Sounds, Inc.*, 2018 U.S. Dist. LEXIS 5088, at *4 (quoting *TC Heartland*, 137 S. Ct. at 1517 (2017)). A "regular and established place of business" has three statutory requirements: the defendant must have "a physical place in

---

[4] Again, these are bald assertions of attorney argument in the FAC, with no basis or support in fact, or even a hint of an inference.

the district"; "it must be a regular and established place of business"; and "it must be the place of the defendant." *In re Cray*. 871 F.3d 1355, 1360 (Fed. Cir. 2017) (clarifying § 1400(b) further after *TC Heartland*). If any element is not satisfied, venue is improper under § 1400(b). *Id.*

In this case, CSI was incorporated as a Kentucky corporation on March 19, 1965 and has always been a Kentucky corporation headquartered in Paducah, Kentucky. Culbertson Decl. at ¶ 5; Yanney Decl., Exh. 1. Furthermore, "CSI's extensive main frame computers are located in Paducah, Kentucky (primary site) and Valpraiso, Indiana (back up/mirror site)." *Id.* Of CSI's approximate 1250 employees, only 15 employees are assigned to a data/network operations center in Waco and 32 employees are assigned to offices in Austin, while the Paducah, Kentucky office houses 278 employees. *Id.* at ¶¶ 7, 10. It is undisputed that Kentucky is the locale where CSI resides.

While CSI does have a physical place of business in the Western District of Texas, neither the CSI personnel assigned to the Waco nor the Austin facilities helped to develop the CSI Platforms in question here. *Id.* at ¶¶ 7-8. Rather, these locations operate conventional data processing to enable normal banking services and provide CSI with general internal corporate technology services, respectively. *Id.* at ¶ 9. Although CSI may have a small presence in this District, CSI has not conducted any act of infringement in this District, and as a result, venue in this District is improper. [5]

---

[5] Not only is the Western District of Texas not home to CSI's headquarters, but it is also not home to MCOM IP itself. FAC ¶ 1. MCOM IP identifies its primary place of business as Harris County, Texas, which is a Houston-based county, making the Waco Division of the Western District of Texas an inappropriate venue for even the Plaintiff. *Id.*

### 2. This Case Can be Transferred to the Western District of Kentucky

If the Court does not dismiss this case for improper venue, the Court may instead "transfer such case to any district or division in which it could have been brought." 28 U.S.C. §1406(a). This case could have been brought anywhere CSI has "committed [alleged] acts of infringement and has a regular and established place of business" or where it resides. 28 U.S.C. §1400(b). CSI is incorporated in Kentucky, and thus "resides" there for purposes of patent venue. Therefore, venue is proper in the Western District of Kentucky, rendering transfer there appropriate under Section 1406(a). *Id.*

### C. <u>Alternatively, This Case Should be Transferred to the Western District of Kentucky For Convenience</u>

Assuming that venue is proper in the Western District of Texas – even though it is not – this case should be transferred to the Western District of Kentucky because Kentucky is clearly more convenient based on the *Volkswagen* factors. Plaintiff has no presence in this District, and appears to have relatively no presence in the entire state of Texas. *See* FAC, ¶ 1. In addition to the fact  that the small CSI satellite offices in this District house significantly less employees when compared to CSI's facilities in Kentucky, the vast majority of relevant files, documents, and electronically stored information related to the development of the CSI Platform are located in Kentucky. *Id.* at ¶ 12. Importantly, "[n]o such personnel, files, documents or electronically stored information are located at CSI locations in Austin or Waco." *Id.* Truly, not a single convenience factor weighs in favor of the Western District of Texas over the Western District of Kentucky. Additionally, this action could have been filed in the Western District of Kentucky. Therefore, transfer to the Western District of Kentucky pursuant to §1404 is appropriate.

### 1. All Private Interest Factors Heavily Favor Transfer to Kentucky

The *Volkswagen* private interest factors focus on the availability of witnesses and documents within both this District and the requested transfer district. The utter lack of relevant witnesses and documents within this District dominates each one of the private interest factors and creates a strong presumption in favor of transfer. The only connection between CSI's alleged offending system and this District is this case itself, which is precisely the type of situation in which transfer under §1404 is warranted.

#### a.   Cost of Attendance and Convenience of the Witnesses

The Western District of Kentucky will be more convenient for potential witnesses, none of whom are located in this District. Culberston Decl. at ¶¶ 7-10. Those that would be indispensable to a possible trial are located in Kentucky because of their work at CSI's headquarters in Paducah, Kentucky or, alternatively, in Franklin, Tennessee, as CSI's Chief Marketing Officer and most of the marketing staff are located there. *Id.* at ¶ 5. While CSI maintains locations across the United States, Kentucky is the one venue with the most substantial resources to assist with this case, making it the most convenient and least costly. *See generally id.*

Accordingly, as the Federal Circuit recognized in *Adobe*, this is a case where the convenience factors "together tip 'significantly' in favor of transferring the case." *In re Adobe Inc.*, No. 2020-126, 823 Fed. Appx. 929, 931 (Fed. Cir. July 28, 2020) (nonprecedential).

#### b.   Relative Ease of Access to Source of Proof Factor Favors Transfer

A court looks to where documentary evidence, such as documents and physical evidence, are stored to determine relative ease of access to sources of proof. *Volkswagen*, 545 F.3d at 317. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of

14

transfer to that location." *DynaEnergetics Eur. GmbH v. Hunting Titan, Inc.*, 2020 U.S. Dist. LEXIS 105241, at \*21-22 (W.D. Tex. June 16, 2020) (citing *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)). In *DynaEnergetics*, the Court highlighted that although this factor seemingly "conflicts with the realities of modern patent litigation" and other cases have also acknowledged this reality, this factor is still relevant in determining the proper forum. *Id.* at \*22, fn.2 (citing *Fintiv,* 2019 U.S. Dist. LEXIS 171102, at \*4); *see also Uniloc USA Inc. v. Samsung Elecs. Am.*, No. 2:16-cv-00642-JRG, ECF No. 216, 2017 U.S. Dist. LEXIS 229560, \*17 (E.D. Tex. Apr. 19, 2017). Although *Uniloc v. Apple* ultimately found that this factor in this particular case came out neutral, the Court recognized that the weight of the documents from the infringer is still a valid distinguishing factor when determining proper venue. *Uniloc USA Inc. v. Samsung Elecs. Am.*, at \*28-29. Ultimately, the location of the documents and the witnesses together weighed towards transfer, and the Court found that the "relative ease of access to sources of proof weighs heavily towards transfer." *Id.* at \*23.

The Court should look at "the location where the allegedly infringing products were researched, designed, developed and tested." *XY, LLC v. Trans Ova Genetics, LC*, 2017 U.S. Dist. LEXIS 218449, at \*34 (W.D. Tex. Apr. 5, 2017). The preferred forum is "the center of gravity of the accused activity," including where the "testing, research, and production as well as the place where the marketing and sales decisions occurred." *Raz Imps., Inc. v. Luminara Worldwide, LLC*, No. 3:15-cv-02223-M, 2015 U.S. Dist. LEXIS 148639, at \*14 (N.D. Tex. Nov. 3, 2015). Here, the center of gravity of the accused activity is in Kentucky.

The headquarters of CSI are in Kentucky, and any relevant documents and other sources of proof are primarily at this location above all others. Culberston Decl. at ¶¶ 5, 7-11. By contrast, any relevant CSI documents or information within this District pale in comparison to what is

located in Kentucky, as the locations within this District had no part in developing the CSI Platforms involved in this litigation. *Id.* at ¶¶ 7-9. Further, none of the other locations would provide the same ease of access to important files as proximity to the Kentucky office would. *Id.* at ¶¶ 5, 7-11. Thus, the vast differences in ease of access to sources of proof favors transfer to Kentucky. While the relevant evidence may be equally accessible in both Districts electronically, this Court has looked beyond that, since to do otherwise would be to thwart the Court's duty to adhere to 5th Circuit precedent. *10Tales, Inc. v. TikTok Inc.*, No. 6:20-CV-00810-ADA, 2021 U.S. Dist. LEXIS 96694, at *4-5 (W.D. Tex. May 21, 2021). .

### c.  *Availability of Compulsory Process Factor Favors Transfer*

Here, the Court considers "the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order." *Fintiv, Inc. v. Apple, Inc.*, No. 6:18-cv-00372-ADA, 2019 U.S. Dist. LEXIS 171102, at *14 (W.D. Tex. Sept. 10, 2019) (citing *Volkswagen*, 545 F.3d at 316). This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple, Inc.*, 581 F.App'x. 886, 889 (Fed. Cir. 2014). This is because a district court can only subpoena a non-party witness (1) to attend a trial, hearing or deposition within 100 miles of where the witness lives or works, or (2) to attend trial within the state where the witness lives or works if without substantial expense. *See Moskowitz Family LLC v. Globus Med., Inc*., No. 6:19-cv-00672-ADA, 2020 U.S. Dist. LEXIS 145438, at *10 (W.D. Tex. Jul. 2, 2020). Witnesses in the state of Kentucky are beyond this Court's subpoena power.

### d.  *Practical Problems also Favor Transfer*

The last private interest factor encompasses "all other practical problems that make trial of a case easy, expeditious, and inexpensive." *Volkswagen*, 545 F.3d at 315. Here, judicial economy

16

favors transfer to Kentucky. This case is still in its infancy; thus, transfer at this point would not cause delays. Further, travel during the ongoing pandemic could cause practical problems for witnesses outside this District (*i.e.*, all of the known relevant witnesses of CSI). Therefore, this factor weighs in favor of transfer.

## 2. All Public Interest Factors Heavily Favor Transfer to Kentucky

### a.  *The Local Interest Factor Strongly Favors Transfer*

When a district has a strong local interest in deciding an issue, a transfer is favored to that location with the strongest interest. *Volkswagen*, 545 F.3d at 317. Here, the Western District of Kentucky has the strongest local interest in this dispute. CSI is incorporated there, and has been a significant local business for more than half a century. In contrast, plaintiff appears to have no presence in this District, [6] and CSI's presence is rather minimal.  Further, it is well settled that the alleged existence of infringing users within the Western District of Texas does not create a meaningful local interest. *Moskowitz,* 2020 U.S. Dist. LEXIS 145438, at *16; *see also DataQuill, Ltd. v. Apple Inc.*, No. A-13-CA-706-SS, 2014 U.S. Dist. LEXIS 82410, at *14 (W.D. Tex. June 13, 2014) ("The fact [that products] are sold to Austin residents is largely irrelevant, as the mere presence of accused products in a district does not create a local interest."); *In re Apple Inc.,* 979 F.3d 1332, 1345 (Fed. Cir. 2020) (Favoring the District where the accused products were developed.) Thus, this factor favors transfer.

### b.  *The Remaining Factors are Neutral*

The remaining factors are neutral. First, a review of the District Court congestion report demonstrates that the Western District of Texas maintains around the same congestion or more than the Western District of Kentucky does. Second, both forums are equally knowledgeable of

---

[6] Aside from filing patent infringement suits.

the laws, and there is no conflict of law. Accordingly, transfer to the Western District of Kentucky is appropriate for this case.

## V.    CONCLUSION

For the foregoing reasons, CSI respectfully requests that the Court dismiss this case in its entirely or, in the alternative, transfer this case to the Western District of Kentucky.


Dated: August 20, 2021                              Respectfully submitted,

                                                    BRESSLER, AMERY & ROSS, P.C.

                                                    */s/ John Kincade* _____
                                                    John Kincade
                                                    Attorney-in-charge
                                                    jkincade@bressler.com
                                                    3700 Buffalo Speedway, suite 1020
                                                    Houston, TX 77098


                                                    */s/ Pierre R. Yanney* _____
                                                    Pierre R. Yanney
                                                    Attorney-in-charge, Pro Hac Vice
                                                    pyanney@bressler.com
                                                    17 State Street
                                                    New York, New York  10004
                                                    (212) 425-9300

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was electronically filed with the Court and that all counsel of record who are deemed to have consented to electronic service in the above-referenced case are being served this 20th day of August 2021, with a copy of the above-document via the Court's CM/ECF System.

*/s/ John Kincade*
John Kincade


*/s/ Pierre R. Yanney*
Pierre R. Yanney

19