# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| MCOM IP, LLC,<br><br>        Plaintiff,<br><br>v.<br><br>CSI, INC.,<br><br>        Defendant. | Civil Action No. 6:21-cv-00196 |

## DECLARATION OF JASON YOUNG

I, Jason Young, do hereby declare and state as follows:

1. I am over 18 years of age and competent to make this declaration. I have either personal knowledge of the matters set forth in this declaration or I have learned them through reasonable investigation, and if called upon as a witness, I could and would testify competently to them.

2. I am employed as Senior Director of Enterprise Banking at Computer Services, Inc. (CSI). I have held this position since 2018. I have been employed at CSI for 11 years, and have held the positions of Director and Senior Director. Unless otherwise indicated, the

statements made in this declaration with regard to CSI are based on my personal knowledge, corporate records maintained by CSI in the ordinary course of its business, and/or as a result of consulting with CSI employees.

3. CSI is in the business, among others, of developing and utilizing in a service bureau construct bank data processing software platforms that are utilized by its customers— most typically community banks or other financial institutions—to allow CSI to process institutional transaction data on a continuous basis and the institutions to communicate with their customers, maintain individual customer accounts, handle customer transactions, and the like.

4. The banking software platforms developed by CSI ("CSI Platforms") allow a bank to conduct regular and routine banking transactions with bank customers. For example, the CSI Platforms allow a bank to conduct online or digital banking transactions. As part of these digital banking transactions, the CSI Platforms and web designs allow a bank to place a banner or ad that may be viewed by the bank customer during the digital banking transaction. (Italicization of "real-time" and "active" in quotations below has been added for emphasis.)

5. Importantly this ad or banner is not targeted or customized to any individual bank customer or selected based on a customer profile, but is rather a general ad or banner that is included by the bank in all digital banking transactions with all of its customers. This may be part of a bank marketing campaign for various periods of time chosen by individual banks, e. g, a bank may run general ads or banners on every end user transaction of customers for a two- or four-week period.

6. The CSI Platforms also allow banks to create and send communications to customers. These communications may take the form of emails or telephone messages, and include promotions or other advertisements the banks wish to communicate to their customers. In some cases, the emails/messages are general and are therefore, the same for a number of customers. In other cases, the email/message may be targeted to certain customers based on certain customer profiles or transactions. Importantly these targeted customer emails/messages are sent as emails or phone messages, and are not part of any real-time or active online banking transaction or banking interaction between a bank and a customer.

7. Of critical importance, then, the CSI Platforms do not have any capability for allowing a bank to monitor in *real-time* an *active* banking transaction and be able to select in *real-time*, targeted marketing to be sent to the user based on the user's profile or preferences. Rather, in the CSI Platforms, any targeted marketing is transmitted as an email or phone message, and has nothing to do with an *active*, ongoing user session or banking transaction. In other words, any email/message is selected in advance, and has nothing to do with an ongoing banking transaction.

8. In addition, the CSI Platforms do not have the capability to receive a user input in *real-time* during a banking session, and based on that *real-time* user input, be able to select previously stored information, and then provide that previously stored information to the user during the same banking session.

9. I have reviewed the complaint for patent infringement filed on March 2, 2021 by MCOM against CSI in this case. In particular, I have reviewed the chart presented at pages 3-10 of the complaint. I have also reviewed a similar chart provided by MCOM to CSI on May 22, 2021. (Copy of May 22, 2021 MCOM chart attached as Exhibit 1). I understand that

the chart from the complaint and the May 22, 2021 chart show the language of MCOM patent claims and attempt to show how the CSI Platforms include each feature of the patent claims.

10. With respect to the chart from the complaint, pages 8-10 discuss that the MCOM patent claim requires that there be:

- "monitoring ... an *active* session in *real-time* for selection of targeted marketing content";

- "selecting in *real-time* ... targeted marketing correlated to ... user-defined preferences";

- "transmitting in *real-time* said marketing content during said *active* session"; and

- "determine whether transmission of additional information related to said marketing content occurs during said *active* session"

11. The May 22, 2021 MCOM chart discusses a patent claim with similar substance which has very similar requirements.

12. As discussed above, the CSI Platforms do not include any of these required features. In addition, the two charts include information copied from various CSI websites and pages ("CSI References"), which I understand is provided in an effort by MCOM to show that the CSI Platforms, as supposedly described in the CSI References, includes each of the required claim elements.

13. I have reviewed and am familiar with the CSI References, and the CSI References do not discuss any of the required claim features that MCOM claims. Further, the CSI Platforms do not include any of these required claim features.

14. The CSI References do not discuss, nor do the CSI Platforms have any capability for "monitoring ... an *active* session in *real-time* for selection of targeted marketing content". For this feature, the chart from the complaint, at page 8, presents portions of the CSI References as supposedly showing this; however, none of these cited portions show anything having to do with "monitoring ... an *active* session in *real-time* for selection of targeted marketing content".

15. The cited CSI References pointed to by MCOM actually state:

## The Payoff of Digital Payments Solutions

Our innovative payment solutions offer more than an exceptional customer digital experience. They also expand your service offerings, enabling your financial institution to grow fee income opportunities, reduce cost-to-serve ratios and remain competitive in an increasingly digital world. With our digital payments solutions, you gain several additional benefits:

Provide your retail and commercial customers with convenient money movement options

Move transactions out of high-cost channels, such as your branch network, and into low-cost digital channels

Present a consistent and simple experience between mobile and online banking platforms

Keep your customers' payments secure

Provide cross-selling opportunities through advertising

16. The CSI References do not discuss, nor do the CSI Platforms have any capability for "<u>selecting in *real-time* ... targeted marketing correlated to ... user-defined preferences</u>". For this feature, the chart from the complaint, at page 9, presents portions of the CSI References as supposedly showing this; however, none of these cited portions show anything having to do with "selecting in *real-time* ... targeted marketing correlated to ... user-defined preferences".

17. The cited CSI References pointed to by MCOM actually state:

### Looking for an integrated core that does it all?

Our cloud-based core banking solution simplifies bank operations and provides the foundation for everything you do, from onboarding and servicing loans to processing withdrawals and deposits.

18. The CSI References do not discuss, nor do the CSI Platforms have any capability for "<u>transmitting in *real-time* said marketing content during said *active* session</u>". For this feature, the chart from the complaint, at page 10, presents portions of the CSI References as supposedly showing this; however, none of these cited portions show anything having to do with "transmitting in *real-time* said marketing content during said *active* session".

19. The cited CSI References pointed to by MCOM actually state:

## The Payoff of Digital Payments Solutions

Our innovative payment solutions offer more than an exceptional customer digital experience. They also expand your service offerings, enabling your financial institution to grow fee income opportunities, reduce cost-to-serve ratios and remain competitive in an increasingly digital world. With our digital payments solutions, you gain several additional benefits:

Provide your retail and commercial customers with convenient money movement options

Move transactions out of high-cost channels, such as your branch network, and into low-cost digital channels

Present a consistent and simple experience between mobile and online banking platforms

Keep your customers' payments secure

Provide cross-selling opportunities through advertising

20. The CSI References do not discuss, nor do the CSI Platforms have any capability to "<u>determine whether transmission of additional information related to said marketing content occurs during said *active* session</u>".  For this feature, the chart from the complaint, at page 10, presents portions of the CSI References as supposedly showing this; however, none of these cited portions show anything having to do with the ability to "determine whether transmission of additional information related to said marketing content occurs during said *active* session".

21. The cited CSI References pointed to by MCOM actually state:

# The Payoff of Digital Payments Solutions

Our innovative payment solutions offer more than an exceptional customer digital experience. They also expand your service offerings, enabling your financial institution to grow fee income opportunities, reduce cost-to-serve ratios and remain competitive in an increasingly digital world. With our digital payments solutions, you gain several additional benefits:

Provide your retail and commercial customers with convenient money movement options

Move transactions out of high-cost channels, such as your branch network, and into low-cost digital channels

Present a consistent and simple experience between mobile and online banking platforms

Keep your customers' payments secure

Provide cross-selling opportunities through advertising

### Looking for an integrated core that does it all?

Our cloud-based core banking solution simplifies bank operations and provides the foundation for everything you do, from onboarding and servicing loans to processing withdrawals and deposits.

22. As discussed above, the CSI References do not describe, and the CSI Platforms do not include any of the required features which MCOM claims are found in the CSI Platforms:

- "monitoring … an *active* session in *real-time* for selection of targeted marketing content";

- "selecting in *real-time* … targeted marketing correlated to … user-defined preferences";

- "transmitting in *real-time* said marketing content during said *active* session"; and

- "determine whether transmission of additional information related to said marketing content occurs during said *active* session"

23. With respect to the May 22, 2021 claim chart, MCOM cites to different portions of the CSI References as supposedly describing the various required claim features. However, similar to the discussion above in connection with the claim chart from the complaint, the cited CSI References do not describe any of the claim features that MCOM says (May 22, 2021 claim chart) are provided by the CSI Platforms.

24. To illustrate this deficiency, these are the required claim elements presented by MCOM in the May 22, 2021 chart:

- "*active* session is monitored … in *real-time* for selection of targeted marketing content";

- "targeted marketing content … is selected … and transmitted in *real-time*";

- "determine whether transmission of additional information related to said marketing content occurs during said *active* session"

25. Reproduced below is the entirety of the CSI References pointed to by MCOM as supposedly showing that the CSI Platforms have the various required features:

CSI's online banking services drive revenue through a fully integrated set of tools designed to optimize how your retail and business customers interact with their finances and your bank online. Using our online banking technology, your customers get:

An integrated online bill pay platform

Convenient eStatements that save on paper costs

Customizable loan payment options for multiple payment types

ACH transfers to streamline origination and transactions while managing risk

Funds management to capitalize on excess funds in investment accounts

Positive pay to protect commercial customers from financial loss due to check fraud

Fraud anomaly detection to monitor fraudulent money movement

26. As discussed above, the CSI References do not describe, and the CSI Platforms do not include *any* of the required features which MCOM claims (May 22, 2021 claim chart) are found in the CSI Platforms.

I declare under penalty of perjury that to the best of my knowledge, the foregoing is true and correct. Executed on June 9, 2021, in Paducah, Kentucky.

*/s/ Jason Young*
Jason Young